## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Robert E. Blackburn

Civil Action No. 15-cv-02392-REB

JESS ARGUELLO,

      Plaintiff,

v.

NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security,

      Defendant.

---

## ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[2] filed October 28, 2015,

seeking review of the Commissioner's decision denying plaintiff's claims for disability

insurance benefits and supplemental security income benefits under Titles II and XVI of

the Social Security Act, 42 U.S.C. § 401, *et seq.*  I have jurisdiction to review the

Commissioner's final decision under 42 U.S.C. § 405(g).  The matter has been fully

briefed, obviating the need for oral argument.  I affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that he is disabled as a result of a back disorder and an affective

disorder.  After his applications for disability insurance benefits and supplemental

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 21, 2017, and thus her name is substituted for that of Carolyn Colvin as the defendant in this suit. **Fed. R. Civ. P.** 25(d)(1).  By virtue of the last sentence of 42 U.S.C. § 405(g), no further action needs to be taken to continue this lawsuit.

[2] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

security income benefits were denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on April 21, 2014.[3] At the time of the hearing, plaintiff was 48 years old. He has a high school education and past relevant work experience as a laborer. He has not engaged in substantial gainful activity since April 30, 2010, his alleged date of onset.

The ALJ found plaintiff was not disabled and therefore not entitled to disability insurance benefits or supplemental security income benefits. Although the medical evidence established plaintiff suffered from severe impairments, the judge found the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ determined plaintiff had the residual functional capacity to perform simple, unskilled work at all exertional levels with certain postural and manipulative restrictions which required no frequent or prolonged contact with co-workers, supervisors, or the public. Although this conclusion precluded plaintiff's past relevant work, the ALJ found there were other jobs existing in substantial numbers in the national and local economies he could perform. He therefore found plaintiff not disabled at step five of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42

---

[3] This hearing followed a remand from the Appeals Council of the ALJ's previous unfavorable disability determination. (Tr. 110-111.)

U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  ***Campbell v. Bowen***, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  ***See Kelley v. Chater,*** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a quinquepartite sequential evaluation process for determining whether a claimant is disabled:

1.  The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.  The ALJ  must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3.  The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4.  If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform her past work despite any limitations.

5.  If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(i)-(v).[4] *See also Williams v. Bowen* 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

---

[4] Throughout this opinion, I cite to relevant sections of Part 404 of Title 20 of the Code of Federal Regulations, which contain the Commissioner's regulations relating to disability insurance benefits. Identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits.

Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

## III. LEGAL ANALYSIS

Plaintiff alleges error in the ALJ's assessment of the various medical and other source opinions of record in this case, and claims further the ALJ's combative attitude at the hearing denied him the fair, non-adversarial hearing to which he was entitled. Finding no such errors, I affirm.

Plaintiff first faults the ALJ for failure to consider the functional restrictions suggested by physician assistant Valerie Lobato. While the ALJ should have evaluated this opinion, *see Zagorianakos v. Colvin*, 81 F.Supp.3d 1036, 1043 (D. Colo. 2015) (citing **Social Security Ruling** 06-03p, 2006 WL 2329939 at *3-4 (SSA Aug. 9, 2006)), his failure to do so in this case undoubtedly was harmless, *Bernal v. Bowen*, 851 F.2d 297, 303 (10th Cir. 1988). Ms. Lobato saw plaintiff a total of four times over a period of approximately five months in 2012.[5] Although plaintiff mentioned he suffered from intermittent back pain, his primary complaints were unrelated to his back, and he did not seek or receive treatment for that condition. (Tr. 343-350.)[6]

---

[5]  Plaintiff's characterization of Ms. Lobato as a "treating source" cannot withstand scrutiny. Only an acceptable medical source can be considered a treating source. 20 C.F.R. § 404.1502, a physician assistant such as Ms. Lobato technically cannot be a treating source, *see Weaver v. Astrue*, 353 Fed. Appx. 151, 154-55 (10th Cir. Nov. 18, 2009). Even if Ms. Lobato were an acceptable medical source, her brief treatment relationship with plaintiff would not support a finding that she was a treating source. *See* 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."); 20 C.F.R. § 404.902 (treating source is one with whom claimant has "ongoing treatment relationship"). *See also Pacheco v. Colvin*, 83 F.Supp.3d 1157, 1163 (D. Colo. 2015); *Megginson v. Astrue*, 2011 WL 4382570 at *3 n. 3 (D. Colo. Sept. 20, 2011), *aff'd*, 489 Fed. Appx. 260 (10th Cir. July 17, 2012).

[6]  Plaintiff injured his back at work in July 2009. (*See* Tr. 293-294.) He was released to work with fairly substantial lifting, carrying, and bending restrictions one week later. (*See* Tr. 290.) The following week, plaintiff returned to the doctor demanding to be released to work without restriction. Dr. Richard Nanes acceded, noting plaintiff "is really not going to harm himself by going back to work without restriction[.]" (Tr. 289.) Although plaintiff was scheduled for epidural injections and physical therapy (*see* Tr. 287), he did not receive the injections (for reasons that appear to be insurance-related) and was discharged from physical therapy for failing to keep scheduled appointments. (Tr. 286.) Nevertheless, in

Based on this brief and unremarkable treatment history, Ms. Lobato's conclusory opinion as to plaintiff's functional abilities, authored more than a year after she last treated him, adds no ballast to his claims of disability.[7]  That opinion would rightly have been characterized as inconsistent with and unsupported by Ms. Lobato's own treatment notes, which show she merely reviewed a largely unremarkable 2009 MRI[8] and found tenderness to palpation over the implicated area of plaintiff's lumbar spine on examination.  (*See* Tr. 346.)  *See Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987) (opinion unsupported by medical evidence properly rejected); *Rios v. Astrue*, 848 F.Supp.2d 1283, 1289 (D. Colo. 2012) (same).  As plaintiff has neither argued nor attempted to demonstrate how  the failure to address Ms. Lobato's opinion directly prejudiced his substantial rights, the error does not warrant remand.  *Williams v. Chater*, 1995 WL 490280 at *2 (10th Cir. Aug. 16, 1995)  ("Procedural imperfection that does not affect a party's substantive rights is not a basis for reversal.").  *See also Colosky v. Colvin*, 68 F.Supp.3d 1359, 1365 (D. Colo. 2014).

Next, plaintiff claims the ALJ erred in failing to account more fully for the mental limitations endorsed by the state agency psychiatrist, Dr. Sara Sexton.  While the ALJ gave "great weight" to the bulk of Dr. Sexton's ultimate conclusions, he did not discuss her more specific findings of moderate limitations in several areas of work-related

---

late September, plaintiff reported "[d]espite everything, he is doing much better," and Dr. Nanes noted he had full lumbar flexion to about 80 degree largely without pain, good range of motion without pain on side bending, and full range of motion and no pain on straight leg test.  In light of plaintiff's "vast improvement as compared to July's visit," Dr. Nanes released him to return to work without restriction and noted he had reached maximum medical improvement, with no permanent impairment and no need for follow up or maintenance care.  (Tr. 286.)

[7]  Ms. Lobato completed a one-page form suggesting plaintiff could sit for 40 minutes at a time for no more than four hours a day and could be on his feet for up to 45 minutes at a time for no more than 4 hours in an eight hour day (Tr. 342.)

[8]  The MRI revealed a small disc herniation at L5-S1 with mild narrowing of the foramen bilaterally. (Tr. 304-305, 346.)

mental functioning while assessing the "paragraph B" criteria used to evaluate mental impairments.  (*See* Tr. 19-20, 88-90.)

This argument is contrary to law, indeed, contrary to the very case plaintiff cites in support of it.  *See Carver v. Colvin*, 600 Fed. Appx. 616 (10th Cir. Jan. 20, 2015).  As noted in *Carver*, the Commissioner's Program Operations Manual Systems ("POMS") provides that this section of the evaluator's review form serves as "a worksheet to ensure that the psychiatrist or psychologist has considered each of these pertinent mental activities and the claimant's or beneficiary's degree of limitation."  *Id.*  at 619 (quoting **POMS** DI 25020.010 B.1; internal quotation marks omitted).  Based on these notes, the reviewing doctor then prepares a narrative to "explain[] the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings."  **POMS** DI 24510.060 B.4.a. & B.4.b.  "It is the narrative written by the psychiatrist or psychologist in Section III . . . that adjudicators are to use as the assessment of RFC."  **POMS** DI 25020.010 B.1.  The ALJ properly relied on that narrative here in formulating plaintiff's mental residual functional capacity.  (Tr. 19-20.)

Not surprisingly, if the narrative portion of the evaluator's opinion "fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the [opinion] cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding."  *Carver*, 600 Fed. Appx. at 619.  This is not such a case.  Although plaintiff claims Dr. Sexton's narrative opinion failed to account for the moderate limitations she

found in plaintiff's ability to maintain concentration, persistence, and pace (*see* Tr. 89),[9] her conclusion that plaintiff could sustain ordinary work routines and adapt to work-related situations addresses that issue. (Tr. 90.) Those findings appear addressed to the issue of concentration, persistence, and pace and are not plainly contrary to the finding of moderate limitations. *See Carver*, 600 Fed. Appx. at 619-20.[10]

Plaintiff also maintains the ALJ erred in discounting the manipulative restrictions suggested by the consultative examiner, Dr. Christopher Davis. The ALJ reviewed this opinion thoroughly, giving "great weight" to Dr. Davis's suggested postural and exertional limitations (which were, specifically, that plaintiff had none) but only limited weight to his suggested manipulative limitations because plaintiff did not complain of pain in his wrists or arms either during the examination or at any other time. (Tr. 18.)[11] Arguing that "the absence of evidence is not evidence," plaintiff claims this does not constitute a sufficient reason to discount the doctor's medical opinion.

The problem, of course, is that it is plaintiff's burden to present evidence in support of his claim of disability, *Bowen*, 107 S.Ct. at 2294 n.5, and the lack of objective medical evidence is a pertinent consideration in determining how much weight to assign a medical source opinion, 20 C.F.R. § 404.1527(c)(3). As the ALJ observed, the record is absolutely devoid of any evidence that plaintiff ever complained to a medical source

---

[9] Specifically, Dr. Sexton found plaintiff to be moderately limited in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 89.)

[10] Likewise, plaintiff's suggestion that a moderate limitation on the ability to respond to changes in the work setting would interfere with the basic demands of unskilled work is nothing more than a disagreement with Dr. Sexton's medical opinion.

[11] More specifically, based on a flexion deformity of plaintiff's pinky finger, the ALJ modified Dr. Davis's suggestion that plaintiff should be limited to "occasional" reaching, pushing, pulling, grasping, fingering, and handling to permit him to do these activities "frequently." (Tr. 18). *See* **Social Security Ruling** 83-10, 1983 WL 31251 at *5-*6 (SSA 1983) ("occasionally" means "occurring from very little up to one-third of the time," whereas "frequently" means "occurring from one-third to two-thirds of the time").

about any issues with his hands or wrists.  Dr. Davis's own examination notes show

plaintiff had normal grip strength and, with the exception of being unable to fully extend

his little finger due to a flexion deformity, the examinations of his wrists, fingers, and

hands were completely normal and unremarkable.  (Tr. 316-317.)   The record thus

more than adequately supports his rejection of these proposed limitations.[12]

Finally, plaintiff argues the ALJ did not give valid reasons for affording little

weight to the opinions of the consultative psychological examiner, Dr. Richard Madsen.

I cannot agree.  The record fully supports the ALJ's decision to discount Dr. Madsen's

opinions as inconsistent with the doctor's own examination findings and the record as a

whole.

For example, there was nothing disingenuous in the ALJ's characterization of

plaintiff's GAF score of 60 as "mild to moderate," given that score did indeed place

plaintiff at the high end of the moderate range, on the cusp of mild.[13]  ***Compare***

American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders

at 34 (Text Revision 4th ed. 2000) ["DSM-IV"] (GAF score of 51-60 "indicates moderate

symptoms . . . or moderate difficulty in social, occupational, or school functioning"), ***with***

---

[12]  Moreover, and contrary to plaintiff's argument, the ALJ was not substituting his own lay opinion for Dr. Davis's medical opinion in refusing to adopt these limitations.  ***Hamlin v. Barnhart***, 365 F.3d 1208, 1221 (10th Cir. 2004).  The ALJ was not purporting to assert a medical opinion but to craft a residual functional capacity assessment, which is not a medical determination but an administrative one, and thus reserved to the Commissioner.  20 C.F.R. § 404.1546(c); ***Lumpkin v. Colvin***, 112 F.Supp.3d 1169, 1173 (D. Colo. 2015).  The ALJ here merely evaluated Dr. Davis's opinion in the context of the medical evidence, which is entirely within his legitimate purview.  ***See Lopez v. Barnhart***, 183 Fed. Appx. 825, 829 (10th Cir. June 13, 2006).  ***See also*** 20 C.F.R. § 404.1527(c)(3).  ***Cf. Hamlin***, 365 F.3d at 1121 (ALJ erred in finding the plaintiff's complaints not credible on basis that the plaintiff did not require an assistive device for his neck, where no medical professional ever opined such a device was required or would have proven efficacious in addressing the plaintiff's pain).

[13]  "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." ***Langley v. Barnhart***, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) (citation and internal quotation marks omitted).

DSM-IV at 32 (GAF score of 61–70 indicates "some mild symptoms

. . . OR some difficulty in social, occupational, or school functioning . . . but generally

functioning pretty well").[14]

Nor did the ALJ ignore allegedly supportive findings in Dr. Madsen's reports.  In

this regard, plaintiff points principally to Dr. Madsen's findings that plaintiff had

borderline intellectual functioning and a full-scale IQ of 70, and certain components of

that assessment.  The ALJ addressed these specifically and noted plaintiff's long work

history belied any work-related deficit in his mental functioning.[15]  (Tr. 19.)  *See* 20

C.F.R. § 404.1520(b) (claimant who is performing substantial gainful activity is not

disabled regardless of medical condition, age, education, or work experience).  *See*

*also Harrison v. Colvin*, 2014 WL 892124 at * n.4 (D. Colo. March 6, 2014) (alleged

impairments existed during period of time plaintiff was still working); *Martinez v. Astrue*,

2013 WL 1232194 at *3 (D. Colo. March 26, 2013) (impairment alleged to have existed

during majority of claimant's working life).

Moreover, the record fully supports the ALJ's conclusions that Dr. Madsen's

restrictions were inconsistent with his own examination findings and with the record as a

whole.  As the ALJ noted, Dr. Madsen's examination demonstrate that, despite his

blunted affect, plaintiff's persistence, pace, and fund of knowledge were adequate, his

thought content was logical and relevant, and he was able to perform simple arithmetic

---

[14]  Nor is there anything amiss in the ALJ's characterization of Dr. Madsen's proposed mental limitations as "extreme" in comparison to the GAF score assigned.  (Tr. 19.)  On a residual functional capacity evaluation form, Dr. Madsen rated plaintiff as moderately to markedly impaired in nineteen of the the twenty areas of work-related functioning listed.  (Tr. 335-336.)

[15]  As IQ is presumed to be consistent over a person's lifetime, *see Arguello v. Astrue*, 2008 WL 5330588 at *3 n.3 (D. Colo Dec. 19, 2008); *Nieves v. Astrue*, 2008 WL 4277995 at *5 (D. Colo. Sept. 16, 2008), this observation was relevant and probative.

in his head.  (Tr. 309.)  As discussed above in relation to the ALJ's analysis of Dr.

Davis's opinions, plaintiff's complaint that the ALJ substituted his own lay judgment for

that of a medical expert in concluding that these findings did not translate into the

functional limitations suggested by Dr. Madsen is not sound.  *See Lumpkin*, 112

F.Supp.3d at 1172; *Moses v. Astrue*, 2012 WL 1326672, at *4 (D. Colo April 17, 2012).

Moreover, it is abundantly clear that the record as a whole fails to substantiate

Dr. Madsen's suggested limitations.  The record is absolutely devoid of any evidence

that plaintiff ever sought or received mental health evaluation or treatment as an adult,

despite his allegation that this condition predated his back injury.  (Tr. 306, 329.)

Moreover, in spite of both this condition and his borderline intellectual functioning,

plaintiff spent the majority of his working life as a cement mason, a skilled occupation.

(*See* Tr. 32.)[16]

In short, it is apparent the ALJ properly and adequately assessed the medical

opinions of record, giving valid reasons for the weight he assigned to each and well-

supported explanations for those aspects of each opinion he did not adopt.  Because

his opinion thus is supported by substantial evidence, remand is not warranted.  These

same considerations belie plaintiff's suggestion that the ALJ's allegedly "adversarial"

questioning at the hearing deprived him of the fair and impartial hearing to which he was

entitled.  *See St. Anthony Hospital v. United States Department of Health and*

---

[16]  The vocational expert characterized plaintiff's past relevant work as a cement mason as "heavy work with an SVP of 7."  (Tr. 32.)  "SVP," or Specific Vocational Preparation, "is defined as 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'"  *Dikeman v. Halter*, 245 F.3d 1182, 1186 (10th Cir. 2001) (citation omitted).  Under the Commissioner's regulations, "[s]killed work corresponds to an SVP of 5-9 in the DOT."  **Social Security Ruling** 00-4p, 2000 WL 1898704 at * 3 (SSA Dec. 4, 2000).  *See also* **Dictionary of Occupational Titles**, *Components of the Definition Trainer*, App. C, § II (SVP of 7 describes a job that requires over two years and up to and including four years to learn) (available at http://www.occupationalinfo.org/ appendxc_1.html#II) (last accessed February 3, 2017).

*Human Services*, 309 F.3d 680, 711 (10th Cir. 2002).  At best, the transcript suggests

the ALJ briefly expressed frustration at being asked to further elucidate his prior

decision and voiced a skeptical opinion of Dr. Madsen's professional opinions in

general.  (Tr. 49-52.)  Whatever error might have inured to giving vent to such feelings

in the context of an administrative hearing, nothing in the ALJ's disability decision

suggests that it was infected by any illicit bias or prejudice, and plaintiff does not argue

as much.  *St. Anthony Hospital*, 309 F.3d at 711 ("'[A] substantial showing of personal

bias is required . . . to obtain a ruling that the hearing is unfair.'") (quoting *Roberts v.*

*Morton*, 549 F.2d 158, 164 (10th Cir. 1976)).  Remand thus is not warranted on this

basis either.

## IV.  ORDERS

For these reasons, I find no reversible error in the ALJ's disability determination,

which accordingly must be affirmed.

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through

the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated February 8, 2017, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn

Robert E. Blackburn
United States District Judge